I'll know this but I will tell you anyway remind you about the timing while it's green fine when it turns yellow you have two minutes when it turns red you are done unless we're still asking questions you need to keep answering but if not then you're done so with that we'll go ahead and get started case number 24-50128 League of United Latin American Citizens at all versus Abbott and a lot of other people and we will begin with Perales for League of United Latin American at all good morning and may it please the court Nina Perales for appellants LULAC at all I will reserve five minutes for a rebuttal in Hughes and Bettencourt this court held that the state legislative privilege shields communications between legislators and third parties regarding legislation the district court here erred by expanding the legislative privilege to cover information that legislators did not create communicate or even see because it was in the hands of others this is not how the legislative privilege works I'd like to start with jurisdiction this appeal falls within the collateral order doctrine the state concedes the first two elements of the collateral order doctrine the first two colon factors that the orders below can be interpreted as conclusively determining the dispute and also that it presents important questions that are separate from the merits the disagreement here is the third element whether the post trial review is an effective remedy as recently as 2022 in the Leonard decision this court observed that the collateral order doctrine is generally not available for discovery disputes and that was a case involving a third Hughes and then again in Bettencourt opened the door to exercising jurisdiction under the collateral order doctrine for third party subpoena recipients we contend that that door should be open for parties who are denied discovery as well as those who are ordered to disclose it this court okay now I think you're well aware that well I was a state district judge I had thousands of hearings on discovery so obviously those cannot all be appealed until the end of the case so what is you know we can't just because you are not satisfied with the discovery you obviously represent a party in the case and so you could appeal at the final order even if that meant that a lot of stuff had to get back and back so what is there special about this particular legalist situation that makes it different from the typical you know discovery stuff that we won't take up on in prior to the final thank you the court is aware of the U.S. Supreme Court decision in 2018 in Abbott versus Bettis in which the Supreme Court found that Texas had unconstitutionally racially gerrymandered redistricting lines and racially gerrymandered Latino population in that that was 2018 we were unable to get a remedy for that district until 2020 my answer your honor is that redistricting cases are special because we are on a ticking clock the maps that are challenged expire at the end of the decade and if we are not able to get review and get to our remedy we lose the opportunity it's effectively extinguished what is your best case that you just said that these cases are special what is your best case Supreme Court or Fifth Circuit that allows us to hear that gives us jurisdiction in particular put a finer point on it gives us jurisdiction to hear an appeal of a discovery order where there's no production ordered and it's a party assuming that there's that it is a special type of case I mean you have a three judge panel if I'm not mistaken it is a rather unique situation what case law can we rely on to claim jurisdiction to get to the merits I don't have a case that is as specific as the court has asked for in part because this is a newly evolving area from 2022 we rapidly go to the Hughes and Bettencourt decisions which were not redistricting cases but have which really opened the door in a way that it wasn't open before for third-party subpoena recipients to appeal the substantial public interest that they claimed was in peril had to do with disclosing what they believe is legislatively privileged material what we are arguing is that now that the door is open that as a matter of fairness the substantial public interest that we present which is the potential loss of the ability to get a remedy should weigh equally in that consideration now why not just file a mandamus well as the state observed in their brief they didn't think that that was going to be effective and so we we chose not to file a mandamus just as the subpoena recipients in this case chose not to resist and litigate their issues in a contempt proceeding right or in Hughes and in Bettencourt we chose to take this into a locatory appeal okay but if we end up concluding we lack jurisdiction are you going to seek a mandamus or what are you going to do I don't know the answer to that your honor we may depending on the timing of the decision and whether or not our trial has concluded whether or not our trial we are set for trial on May 21st next month depending on whether our trial court has reached a decision or not we would have to take it from there as judge Engelhardt has observed this is a three judge panel the path from here in terms of an appeal post trial would be to the US Supreme Court the last thing that I would note is that in whole women's health the court talked about the novelty of the questions as weighing in favor of the exercise of jurisdiction under the collateral order doctrine and we believe that the novelty of the questions here which have to do with the scope of the legislative privilege is important and that the district courts do need guidance here the district court radically expanded the scope of the legislative privilege from what we have in Hughes and Bettencourt and because of that just as in whole women's health we believe that the court should exercise jurisdiction under the collateral order doctrine and clarify for district courts what the scope but if you're having your trial next month even if we found we had jurisdiction and think you should get a little bit of discovery or something like that how is that gonna work its way through we don't typically we're not typically able to send out an opinion by like tomorrow so you would maybe not get the opinion immediately even if we ended up deciding we had jurisdiction so I'm a little bit wondering how that would affect everything your honor I think it would depend on the timing of the district courts decision itself if we are still without a decision from the district court and certainly the last cycle of redistricting we filed in the year ending one we tried the case three times and eventually ended up with a district court decision in 2017 which was six years later it depends on when the district court renders its decision if we have the opportunity to do a supplemental hearing and include that in the original record we would seek to do that okay where it has the full material before it without any further questions I'd like to turn to the merits all right the state legislative privilege is not an endless game of telephone that shields information a legislator never saw because it was in a conversation of a strategist who talked to a lobbyist who talked to a staffer who worked for the legislator the state legislative privilege is qualified and it must be strictly construed the scope of the legislative privilege shields information that reflects legislators actions in the proposal formulation and passage of legislation these are the legislators thoughts and words and communications even though federal courts are sensitive to interfering with the functioning of state legislators first there is not a separation of powers issue with respect to the state legislative privilege because federal courts and state legislatures are not co-equal branches of government but going over to the consideration that federal courts have for the workings of state legislators it doesn't create the type of unbounded state legislative privilege without limiting principles for scope and waiver that we have in the district court decision and most important the scope of the legislative privilege is not reverse engineered from what is relevant to plaintiff's claims that's exactly backwards from the way that the privilege works because it's personal to legislators Hughes talks about the legislative privilege as shielding legislator communications with third parties because quote lawmakers routinely meet with persons outside the legislature to discuss issues that bear on potential legislation the district court erred here by shielding information that did not involve the legislators and thus does not reflect their actions or communications in fact in some situations third-party custodians sequestered the information from legislators in that situation they cannot assert the legislative privilege so for example the 795 documents created by the Office of the Attorney General the privilege logs say that these materials were never shared with legislators and the privilege logs do not say that the information in the documents were ever shared with legislators another example data in the computer of the lieutenant governor Dan Patrick which the district court correctly concluded who is a member of the executive branch and there was no claim that this member of the executive branch ever shared this information with a legislator and then finally the same for redistricting steps taken by a map drawer or a lobbyist for members of Congress that was never shared with a legislator there's another scope error in the district court's decision and that has to do with timing the scope of the legislative privilege cannot encompass information that was generated following enactment of the challenge legislation talking about legislation even a lawmaker talking about legislation after it is passed as we understand from Hughes is not related to the proposal formulation or passage of legislation finally we'd like to highlight several ways in which the court erred when it said that the legislative privilege is not waived first of all the court did not address the argument that some of this legislative privilege was waived as to testimony involving mr. Adam Kincaid because it was not objected to in an earlier deposition where the lobbyist testified on the same topics the legislators counsel was there did not object but then in a later deposition in which the same material was covered the legislator sought to object and assert the legislative privilege we believe that waiver is present in that situation and the district court did not address it second the district court created a test for waiver that cannot be squared with Hughes Hughes says that the legislative privilege is waived when it's shared with a third party outside the legislative process the district court here said waiver only occurs when the legislator makes the information publicly available and that is a very different test and much too broad for the limits that were presented by Hughes the district court said that the general public has to have access to the information in order for waiver to occur and that is that basically shields information shared with an unlimited number of people as long as it's just short of the general public finally while recognizing that making information public does waive the privilege the district court aired by holding that selective public disclosure by legislators did not waive the privilege legislators publicly to have engaged in a race blind map drawing process that they relied on certain specific data and that they confirmed the compliance of their maps with the Voting Rights Act but then when we asked them questions about those very same public statements they asserted the legislative privilege in their depositions and it is our contention that by talking about the process in such detail publicly that constitutes waiver if the court has no additional questions okay you've saved time for rebuttal all right we'll now hear from William Cole for the defendant well the the appellees thank you judge Haynes and may it please the court and let me start with jurisdiction because I think it is dispositive and probably the most straightforward way for the court to resolve this case there is no jurisdiction under this case under the collateral order doctrine focusing on the third element of the Cohen test whether the district court's order is effectively unreviewable on appeal from final judgment as you note there are parties they can appeal after the final judgment that's what Mohawk said party status is important and the argument I heard from my friend on the other side is that well Bettencourt and Hughes opened the door well they did not I'll I'll quote you from from Hughes because I think it's a very important line when we're talking about the class of orders and again that goes back to Mohawk to when we're looking at the collateral order doctrine it's on the class of orders the class consists solely of claims from non parties who lack appellate remedies available to the contenders in litigation that's it of Hughes that is the class we're talking about non parties who are denied legislative privilege as you say they are parties so that means they can appeal the judgment just the same as anyone and they can get a new trial if the if it was prejudicial and it was an error so in our view that resolves the case you can just dismiss on collateral order doctrine grounds because that is dispositive not aware but it's time does timing matter here your opponent suggested that it does because of you know voting and things like that and also legislators in and out and this and that and so it's a little bit different from a typical case like I said when I was a state district judge hearing thousands of hearings about discovery obviously those can't all be appealed and we are not saying that so I'm just wondering is there something cubbied here with a three judge panel at the district court with the fact that it involves legislatures it's so on and the timing no I'm not aware of any case that that says that that makes this timing relevant they certainly didn't ask the trial court to stay the trial pending this appeal they could have done that I suppose they didn't do that at the at the status conference for trial about a month ago I mean actually the state legislator said you should give us more time to get ready for trial because it's a pretty quick trial schedule but again they didn't do that they haven't asked this court to do that so I don't see how the timing is relevant I'll note this case has been pending since 2021 they didn't amend their complaints until a couple weeks ago I think I mean last week or two weeks ago so if timing is suddenly an issue I'm not sure how that squares with their litigation conduct but to go directly to your question no I'm not aware of any case that says timing that there's some timing element that turns on the application of the Cohen factors certainly Hughes didn't suggest that Bettencourt didn't suggest that Mohawk doesn't suggest that whole woman's health versus Smith doesn't suggest that again I think the key point here is that's the party status that is relevant and here again they are parties not non-parties in the cases where they say they open the door the court was very clear both in Bettencourt and in Hughes that it was the fact that they're non-parties that makes the order in those cases effectively unreviewable on appeal from final judgment and so it doesn't matter that it's a three judge panel or that these are legislators that could be in and out and all kinds of stuff could be hard to find if we waited for the trial and then they appealed and so on down the road I'm not aware of any case that says the collateral order doctrine turns on whether it's effectively unreviewable turns on whether or not it's a three judge panel I've never seen that case that's that's new okay but what about legislature what about the legislator yeah the fact that they can be in and out they get elected they get elected they move in they move out it's a little different animal than the typical discovery cases again I don't I don't see any case that says that is relevant to this procedural appellate jurisdiction question about the collateral order doctrine the focus is not on the who's the recipient of the discovery it's whether the order at issue is effectively unreviewable on appeal from final judgment that's Cohen factor 3 and here it is they can appeal once they get a final judgment and that is that is the test again we're talking about a class of orders not the recipients of the subpoenas the class of orders again is consists solely as the unanimous court said in Hughes of claims from non parties who lack the appellate remedies they have the appellate remedies because they are parties and Mohawk again says the remedy is you seek a new trial if it's prejudicial so again we think you can stop there and resolve this this case on jurisdictional grounds I will briefly touch on the merits we think this case is resolved completely by Hughes and Bettencourt twice in the last two years this court has affirmed and reaffirmed that the scope of the legislative privilege is necessarily broad and it covers legislators actions within the sphere of legitimate legislative activity meaning their activities in the course of the proposal formulation and passage of legislation this court in good company on that because it's joined at least three of its sister circuits at 1.4 in recognizing that scope and appellant's arguments on the merits here are simply a full frontal attack on Hughes and on Bettencourt judge Smith writing for the district court properly rejected that and this court should too because the rule of orderliness compels it and their arguments come back to scope waiver and yield which are the three buckets that that Hughes cited we think all of those all those attacks fail on the scope issue this difference between factual and non-factual materials I'll say at the outset to accept their argument would require the court to create a circuit split where there is none with Pernell in the 11th Circuit but more broadly the legislative privilege protects the entire sphere of legitimate legislative activity and as judge Smith rightly noted for for the three judge panel at ROA 23581 disclosing that a legislator relied on or considered some facts and not others would inevitably indicate their deliberations also can you reconcile Hughes and the Jefferson Community Health Care Center case yes I can the answer is that the Jefferson Community Health Care case says that you use the legislative privilege to bar adjudication of a claim that was the holding of Jefferson Community Health Care Centers and Hughes is about evidence about documents and that's exactly what Hughes said so I know that they as I said just a few minutes ago their arguments are essentially taking on Hughes taking on Bettencourt and saying you should ignore them and follow Jefferson it's not how the rule of orderliness works this court in Hughes specifically rejected the argument that Jefferson was it was relevant and so the this panel would be bound by that to be sure I understand they they disagree with Hughes they disagree with Bettencourt but what they should do then is ask the en banc court for review or ask the Supreme Court to take it up on a cert petition but asking this court to essentially flout the rule orderliness by ignoring it by following Jefferson I don't think would be would be appropriate under the rule of orderliness there so so Jefferson I think again it's about barring adjudication of a claim that was the holding you have a paragraph in Jefferson about the legislative privilege and the last sentence is what's relevant it says at any rate even assuming the council members reasons for passing the resolutions are privileged in the sense they can't be compelled to disclose them this evidentiary privilege cannot bar adjudication of a claim and again the unanimous panel and Hughes already said that that is only about barring adjudication of a claim rule of orderliness would compel the court to follow that they talk a lot about sharing documents with third parties that's Bettencourt so they say well someone else they didn't see it or something like that well Bettencourt said as long as the person is brought into the legislative process the privilege is brought and covers them so we think that's rejected by Bettencourt and the same is true of their sort of custodian argument enactment period this is all again part of their attack on scope the enactment period I think misunderstands in the legislative process works the legislative process the legislature in Texas is by any of what meets every two years but they're working even outside of the six or so month period that they're not working so it's not like it's only it's only the period in which the legislators in session that the privilege covers that's just not how the modern legislative process works waiver touched on it briefly again when Bettencourt resolves this third parties are involved they can be involved if they're brought into the process I'll point to the Hilskoski case on waiver from the Supreme Court they say well you know if you testified in a deposition that should waive it well Hilskoski says it needs to be clear an unequivocal waiver and in that case the representative testified about seven to ten times in a grand jury and the Supreme Court said not good enough it's not a waiver so we think that takes care of waiver the last thing is this yield issue and I think Bettencourt resolves that I think they say in their brief that the three judge panel kind of created this three tripartite test well that is the law of the circuit under Bettencourt that Judge Smith wrote in in Bettencourt and then applied in in in this order on appeal here so it talks about whether the civil case this is an extraordinary civil case Lee from the Ninth Circuit says it's not the in rain the North Dakota Legislative Assembly case says it's not that was that was GVR after the Supreme Court but I think it is probative and so in some in order to accept their arguments on the merits you would have to not only flout Hughes not only felt that in court but you would have to create a circuit split where there is none from the ninth from the 11th twice the first and the eighth which is GVR but I think it is probative on that if there are no further questions I'll yield back my time but happy to take them any question okay thank you very much we'll now hear the rebuttal thank you just to correct the record in a couple of aspects my friend mr. Cole said that state legislators did not ask for more time prior to the trial that's not correct state legislators are not parties in this lawsuit their third party subpoena recipients defendants the state of Texas and Governor Abbott did note to the court that we were set on a very fast timeline for trial and I think everybody including the judges in that case understand that a second correction we did not wait to amend our complaint until last week the court invited the plaintiffs to update their complaints given the passage of time from the filing of this case in 2021 to our trial setting in 2025 specifically to update things like changes in census data and data this is very typical on redistricting cases the LULAC plaintiffs thus filed their fifth amended complaint in the litigation last week non-parties do not lack remedies when they are ordered to produce discovery they can resist the discovery and litigate contempt but as judge the door should be open to interlocutory review and we contend that we fall into that space Mohawk from the US Supreme Court says that disclosure of privileged information isn't enough to tip the scales towards interlocutory review under the collateral order doctrine there has to be something more and Hughes and Bettencourt found that something more in the substantial public interest that they identified with disclosure of claimed legislatively privileged materials we present the substantial public interest that is imperiled by losing the ability to gain a remedy in this case through the delay of having to litigate this issue after the trial again we would point the court's attention to whole women's health which observed that the need for clarification by this court for district court courts on novel questions should weigh in favor of review my friend mr. Cole has described Jefferson in the answer to your question judge Engelhardt about how you square Jefferson community health and Hughes and we are not arguing here that Hughes and Bettencourt are wrongly decided what we are arguing is that the district court went way way way beyond that but just focusing on Jefferson and Hughes my friend says that Jefferson was just dicta and you should ignore it but Hughes itself when it discussed the scope of the legislative privilege was also essentially doing that with dicta because in Hughes the parties agreed and the district court had ruled that the materials were legislatively privileged that they fell within the scope and the question in Hughes was waiver not scope so to the extent that Jefferson doesn't have binding language about scope neither does Hughes but we believe they're both helpful in Jefferson the privilege is described as qualified and strictly construed and in Hughes the privilege and also in Bettencourt the privilege is described as something that protects information exchanged by a legislator directly with another person in both Hughes and Bettencourt whether it was scope or waiver it had to do with a direct communication with a third party that had been brought in to the process Hubbard and Parnell the 211th circuit cases also dealt with material in the custody of legislators involving something they had generated seen discussed that is not what we have here finally as to the ruling on timing and material created post enactment my friend has said that legislators are working after they pass legislation of course they are working and they are very hard-working people but they are not working on that legislation and statements and communications that they have regarding legislation that is already enacted already sent to the governor for his signature are not covered by the privilege thank you all right thank you we appreciate both sides the case is now under submission thank you